IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| STEVEN SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 1:04cv1116(JCC) |
| ) | |
| THE MITRE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant's Motion for Summary Judgment. For the following reasons, the Court will partially grant and partially deny Defendant's motion.

### **I. Background**

Plaintiff Steven Sanders, a 65-year old white male, brings this action against The Mitre Corporation ("Mitre") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.[1]

Mitre hired Sanders in May 1996 to work in its Center for Advanced Aviation Systems Development as a Multi-Discipline Systems Engineer at the Applied Capability Category 3 ("AC3") pay level. He received good performance evaluations and substantial pay increases from 1996 through 2000. In April 2000, Mitre

---

[1] Sanders' breach of contract and negligent infliction of emotional distress claims were dismissed. Sanders has withdrawn his intentional infliction of emotional distress claim.

promoted Sanders from AC3 to an AC4 Lead Engineer and awarded him a merit pay increase.

At that time, Bob White became Sanders' direct supervisor.  Sanders alleges that White made age discriminatory remarks to Sanders.  In particular, White allegedly told Sanders that he was an "old geezer," that he was "getting old," and that you "can't teach an old dog new tricks."

White's first performance evaluation of Sanders (the "1999-2000 Evaluation") was favorable, and Sanders received a 5.79% merit-based raise.  White's second performance evaluation of Sanders (the "2000-2001 Evaluation") indicated that Sanders was not performing satisfactory work.  White gave Sanders a performance rating of three, the lowest rating on Mitre's scale of one to three.  Sanders did not qualify for a raise as a result of this evaluation.

White was Sanders' supervisor until March 2002.  At that time, Francis Maginnis became Sanders practice leader/supervisor. Maginnis' performance evaluation of Sanders (the "2001-2002" Evaluation), which included input from White, again indicated that Sanders was not performing satisfactorily.  Sanders again did not qualify for a raise.  Sanders' 2001-2002 performance evaluation also contained suggestions from management on how Sanders could improve his performance.  However, Sanders

"knew the work that [he] did was superb" and admits that he ignored this advice. (Pl.'s Dep. 273-75).

In early 2003, Maginnis and his supervisor, Linda Chambless, made the decision to place Sanders on probation. A probationary committee of five members, including Maginnis, Chambless, Mike Blom, Judith Clapp, and Edwin Rueda was formed to reivew Sanders' work on a probationary task. Blom, Clapp, and Rueda were Mitre managers that had little to no experience working with Sanders. Rueda was assigned to be the task leader for Sanders' probationary task. The committee determined that Sanders' final report for the probationary assignment was not satisfactory and made the decision to terminate Sanders' employment. Mitre terminated Sanders on July 3, 2003.

Sanders claims that his negative evaluations were not reflective of his performance and that Mitre wrongfully placed him on probation. He further claims that the probationary process was a sham and that he performed well on his probationary task.

Sanders filed an Equal Employment Opportunity Commission ("EEOC") complaint on May 14, 2003, alleging that Mitre had discriminated against him based on his age. Sanders further claims that Mitre retaliated against him by firing him on July 3, 2003, after he complained of the alleged discrimination.

Mitre's Motion for Summary Judgment on Sanders' age discrimination and retaliatory discharge claims is now before the Court.

## II. Standard of Review

Summary judgment is appropriate when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 190 (4th Cir. 1997)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "To prevail on a motion for summary judgment, a party must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)); *see also* Fed. R. Civ. P. 56(c); *Evans v. Technologies Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs.*, 933 F.2d 1253, 1259 (4th Cir. 1991)(citations omitted). The very existence of a scintilla of evidence or of unsubstantiated conclusory allegations, however,

is insufficient to avoid summary judgment. *Anderson*, 477 U.S. at 248-52.

### III. Analysis

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. 29 U.S.C. § 623(a)(1). An ADEA claim may be established through two alternative methods of proof: (1) a "mixed-motive" framework, requiring evidence that the employee's age motivated the employer's adverse decision; or (2) a "pretext" framework identical to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis used in Title VII cases. *EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 163 (4th Cir. 2004)(citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-85 (4th Cir. 2004)(en banc)). Sanders argues that he has raised issues of material fact that preclude summary judgment under either theory.

Sanders was deposed on May 2, 2005. He later signed a sworn declaration on June 29, 2005. The Court's ruling on this motion is complicated by discrepancies between Sanders' deposition testimony and declaration. On many important issues in this case, Sanders responded to Defendant's deposition questions on several material issues by saying that he could not remember. He now disputes these same issues by relying on his

post-deposition declaration, in which he provides details that he could not recall at his deposition.

A party cannot create a triable issue in opposition to summary judgment by contradicting his deposition testimony with a subsequent declaration. *See, e.g., Rohrbough v. Wyeth Lab., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990). A distinction must be made, however, between statements that are contradictory and those that clarify an ambiguous, confusing, or incomplete prior statement. *See, e.g., Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998). Mitre cites several examples of what it claims are inconsistencies between Sanders' deposition testimony and declaration. The discrepancies involve central issues in this case, such as the circumstances surrounding the alleged age-discriminatory comments by White and Sanders' discrimination complaint to Mitre's human resources department. However, the differences are more accurately described as more detailed explanations of the events at issue. Sanders does not directly contradict himself so much as recall additional information that he claims he could not remember during his deposition. Although a jury may find Sanders' testimony regarding these issues to be fabricated – considering his failure at deposition to recall the circumstances surrounding events so significant to his age discrimination claim – the Court

cannot conclude that what he said during his deposition is unexplained, contradictory testimony that must be disregarded.

A. "Mixed Motive" Analysis

Under the "mixed motive" framework, Sanders may establish his claim of age discrimination by demonstrating through direct or circumstantial evidence that Mitre decision-makers placed substantial negative reliance on an illegitimate criterion, Sanders' age, in reaching their decision with regard to Sanders' employment. *See Hill*, 354 F.3d at 284. Sanders need not demonstrate that age was the sole motivating factor to prevail, so long as it was a motivating factor. *See id.* Sanders argues that a "mixed motive" framework is appropriate in this case on the basis of the disparaging age-related statements allegedly made by White. The comments by White are sufficient to raise a triable issue of fact with regard to the motivation behind White's evaluation's of Sanders.

Mitre argues that it is not subject to liability under the ADEA even if white made the alleged comments because White was not the decisionmaker behind Sanders' 2001-2002 performance evaluation, placement on probation, or termination. The Supreme Court evaluated an employer's liability for the discriminatory motivations of a supervisory employee in *Reeves v. Sanderson*, 530 U.S. 133, 140 (2000). The Fourth Circuit has explained:

> Reeves informs us that the person allegedly acting pursuant to a discriminatory animus need not be the

7

> "formal decisionmaker" to impose liability upon an employer for an adverse employment action, so long as the plaintiff presents sufficient evidence to establish that the subordinate was the one "principally responsible" for, or the "actual decisionmaker" behind, the action.

*Hill*, 354 F.3d at 288-89 (citing *Reeves*, 530 U.S. at 151-152). On the other hand, the Fourth Circuit has declined

> to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had a substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision.

*Id.* at 290.

White was not a formal decisionmaker with regard to Sanders' 2001-2002 performance evaluation, placement on probation, or termination. Sanders' subsequent direct supervisor, Maginnis, prepared Sanders' 2001-2002 performance evaluation and later, along with Chambless, made the decision to place Sanders on probation. A committee of five members of Mitre management evaluated Sanders' performance on his probationary project. The probationary committee unanimously agreed that Sanders' probationary project, which culminated in a case management report, was of poor quality and that Sanders' performance on the probationary project demonstrated that he did not have the skills required of an AC4. Maginnis prepared the memorandum explaining the committee's decision and recommended

that Sanders be terminated.  The memorandum was submitted to Mitre's human resources department and Mitre management, who concurred with, and signed-off on, the termination.  Sanders provides no evidence that the actions or decisions of anyone at Mitre other than White were motivated by Sanders' age.

While White was not a formal decisionmaker, he did play a role in the decisionmaking process.  Mitre's employment evaluations consist of two parts.  The first part is completed by the employee being evaluated and describes the employee's projects, work, goals, and accomplishments for the performance period.  The second part of the evaluation is completed by the employee's supervisors.  It describes the employee's performance and offers suggestions on how to improve performance.  White provided to Maginnis some of the information that Maginnis incorporated into Sanders' 2001-2002 performance evaluation.  However, even though Sanders has raised a genuine issue of material fact with regard to the motivation behind White's submissions to Maginnis, Mitre argues that Maginnis based his report on his own observations as well as the submissions of Sanders' other project leaders, peers, task leaders, and even government sponsors.  Some of these comments were positive and some were critical of Sanders.

Sanders has presented no direct evidence that Maginnis was motivated by Sanders' age when preparing Sanders' performance

9

evaluation.  The question is whether Maginnis' evaluation of Sanders' and the following probationary process and termination were merely a rubber-stamp based on White's assessment of Sanders.  *See Hill*, 354 F.3d at 292 (adopting rubber-stamp theory of *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990)).

Sanders has submitted the affidavit of Emil Blassic, his supervisor at Mitre prior to White, as evidence that Mitre's entire termination process was a sham.  Blassic describes his own alleged forced resignation from Mitre and recounts a conversation with Blom, who later became one of the managers on Sanders' probationary committee.  Blom allegedly told Blassic that he should find a new job because, even though he was well qualified and performed well, Blom did not believe that Blassic fit in at Mitre.  (Blassic Aff, ¶ 14).  When Blassic later told Blom that he had been unable to find a new job, Blassic stated that he would start the "termination process", which consisted of giving Blassic a probationary task that lasts six weeks to two months, and then firing him.  (Id., ¶ 16).  Blom allegedly told Blassic that he would be at Mitre two months at most once the "termination process" began.  (Id.)  Blom's statements to Blassic could be viewed by a reasonable jury as evidence that Mitre management places employees it intends to fire on probation, assigns them a probationary task that they are set up to fail, and then fires them.  Blom's statements to Blassic would be

admissible[2] as evidence against Mitre as a party admission. *See* Fed. R. Evid. 801(d)(2). This is sufficient evidence to create a triable issue of material fact as to possible rubber-stamping by Maginnis and other Mitre managers and satisfies the decisionmaker-test as laid out in *Hill*, 354 F.3d at 388-389. Accordingly, Sanders may proceed to trial under the "mixed motive" theory.

    B.  Pretext Analysis

To demonstrate a prima facie case of age discrimination under the pretext framework, the plaintiff must show that: (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing her job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002). If a prima facie case is presented, in accordance with *McDonnell Douglas* and its progeny, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

---

[2] Mitre argues that Blassic's affidavit is irrelevant because Blassic does not refer to any age discrimination in relating the facts surrounding his own alleged forced resignation. However, Blassic's affidavit is relevant as evidence of Mitre's alleged "rubber-stamp" termination procedure, not as direct evidence that Mitre discriminates against older employees. A jury may determine that this procedure is employed by Mitre in terminating employees in general, without regard to Mitre's rationale for termination.

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996). Assuming the employer meets this burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000).

In this case, the first two requirements are undisputedly met. The question is whether Sanders can raise genuine issues of material fact on the issues of whether he was performing his job at a level that met Mitre's legitimate expectations and whether his position was later filled by someone outside the protected class. As discussed above, see supra Part III A., several Mitre managers found Sanders' performance to be unacceptable. Whether they made their determination based on independent consideration of Sanders' performance or as a rubber-stamp of White's evaluation is an issue of fact to be determined by the jury. A reasonable jury could discredit the testimony of those critical of Sanders' performance and find that Sanders was performing at a level that met Mitre's reasonable expectations.

Nevertheless, Sanders has not raised a triable issue with regard to the fourth prima facie element. In Fall 2002, Sanders began working on a Modernization Infrastructure Meeting ("MIM") project for the Internal Revenue Service ("IRS"). He claims that in January 2003, after he had been issued two

undeserved negative employment evaluations, he was transferred to a different IRS project, the Modernized e-File application ("MEF") and a younger Mitre employee began working on the MIM project. This transfer, however, was not an adverse employment action.

An adverse employment action is a discriminatory act which "adversely affect[s] the terms, conditions, or benefits" of the plaintiff's employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)(internal citations and quotation marks omitted). Conduct short of ultimate employment decisions can constitute adverse employment action. Id. The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action. Id. at 376 (citing *Von Gunten v. Maryland*, 243 F.3d 858, 868 (4th Cir. 2001). A "reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." Id. (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). "[A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. (citing *Boone*, 178 F.3d at 256-57; *Taylor v. Va. Dep't of Corrs.*, 177 F.

Supp. 2d 497, 504-05 (E.D. Va. 2001)). Sanders admits that his title, salary, and benefits were not affected by his reassignment and that such reassignments are not unusual, so the age of his replacement on the MIM project is irrelevant. Sanders does not allege that he was replaced by someone outside the protected class after he was terminated. Accordingly, Sanders cannot demonstrate a prima facie case of discrimination under the *McDonnell Douglas* pretext framework.

C. The Retaliation Claim

Sanders' retaliation claim is also evaluated under the *McDonnell Douglas* framework. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002)(citation omitted).

All three iterations of Sanders' Complaints state that he was terminated by Mitre in retaliation for his filing of an EEOC complaint. However, Sanders now concedes that Mitre was unaware that Sanders' had filed his EEOC complaint at the time Mitre terminated him. In his opposition to Mitre's motion for summary judgment, Sanders' now claims for the first time that he was fired by Mitre for making an internal discrimination complaint. The federal pleading rules require that a complaint give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Mitre was placed on notice that Sanders would attempt to show that he was terminated in retaliation for filing

14

an EEOC complaint, not Sanders' revised retaliation claim. Accordingly, Sanders cannot recover under this theory. The Court will grant summary judgment on Sanders' retaliation claim.

### IV.  Conclusion

For the foregoing reasons, the Court will partially grant and partially deny Mitre's motion for summary judgment. An appropriate Order shall issue.

July _____, 2005                    _____/s/ James C. Cacheris_____
Alexandria, Virginia              UNITED STATES DISTRICT COURT JUDGE